AO 91 (REV.5/85) Criminal Complaint     AUSA Amy St. Eve -- 312-35?-5351

# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA
v.

MAGISTRATE JUDGE ROSEMOND

DAVID ROST

**CRIMINAL COMPLAINT**

CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From in or about __March, 1996__ through at least May 1996, in __Cook__ county, in the __Northern__ District of __Illinois__ defendant(s) did,

**98CR 0523**

in violation of Title __18__ United States Code, Section(s) __1341__.

I further state that I am a(n) __S.A., U.S. Customs Service__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

**DOCKETED AUG 1 0 2000**

Continued on the attached sheet and made a part hereof:  __X__ Yes  ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__July 21, 1998__                                    at __Chicago, Illinois__
Date                                                  City and State

__W. Thomas Rosemond, Jr., U.S. Magistrate Judge__    _W. Thomas Rosemond Jr._
Name & Title of Judicial Officer                      Signature of Judicial Officer

STATE OF ILLINOIS)

COUNTY OF COOK )

## AFFIDAVIT

I, Jerome H. Deaven, being duly sworn, hereby depose and say:

1. I am a Senior Special Agent (SSA) with the United States Customs Service, Department of the Treasury, and have been so employed for nine years. I am currently assigned to the Office of Internal Affairs, Resident Agent in Charge/Chicago. I have received extensive training in the area of criminal investigations. I also received specialized training in the areas of impersonation and bribery investigations. I have conducted over 150 previous criminal investigations as a Special Agent.

2. This affidavit is made in support of a complaint against defendant David ROST for violations of Title 18 United States Code, Section 1341 (Mail Fraud), 1343 (Wire Fraud) and aiding and abetting such offenses in violation of Title 18, United States Code, Section 2.

3. In March 1996 the U.S. Customs Service and the Royal Canadian Mounted Police (RCMP) began a joint investigation of the Collin Grant Telemarketing Organization. Members of the Collin Grant Organization impersonate U.S. Customs officers as part of their scheme to defraud U.S. citizens of their savings. The victims of this organization have informed me that individuals call

them and request they send large sums of money to a certain address in Canada in order to obtain a large cash prize. Although many of the victims I interviewed sent large sums of money to the Collin Grant Organization as requested, no prizes were ever received by the victims. As set forth below, there is probable cause to believe that David ROST was a leader of the Collin Grant Organization.

4. On March 28, 1996 I was informed by RCMP Corporal ("Cpl") Knight that the RCMP seized 13 cashier's checks totaling $34,940 from 2035 Grand Blvd, Suite #107, Montreal, Quebec. The checks were made payable to "Collin Grant" or "Simpson St. Clair." Mary Moldenhauer of Countryside, Illinois was a victim who mailed one of the cashier's checks seized by the RCMP.

5. On April 24, 1996 I interviewed Moldenhauer at her residence in Countryside, Illinois. Moldenhauer said on March 12, 1996 she received a telephone call from a person claiming to be the P.R. Director for the Collin Grant Brokerage. The caller informed Moldenhauer that she had won $25,000; however, to claim the money the caller said she first had to pay a lien of $1,865. The caller instructed Moldenhauer to send a cashier's check for $1,865 to 2104 Prudhomme, NDG, Quebec, Canada H4A3H2. The caller said that upon receipt of the cashier's check, Collin Grant would send Moldenhauer a check for $25,000.

6. On March 13, 1996 a person claiming to be a U.S. Customs agent called Moldenhauer and confirmed that she had won $25,000. Moldenhauer sent a cashier's check for $1,865 payable to "Collin Grant" via Express Mail from Countryside, Illinois addressed to

"Collin Grant, 2104 Prudhomme, NDG, Tuebec [sic], Canada, H4A3H2."

7. On March 20, 1996 Moldenhauer received another telephone call from the Collin Grant Organization. The caller explained that a mistake was made and Moldenhauer needed to send an additional $5,595 to cover the lien against the money she had won. The caller instructed Moldenhauer to send the cashier's check to 2035 Grand Blvd, Suite 107, Montreal, Quebec. Moldenhauer mailed the cashier's check payable to Collin Grant in an Express Mail envelope from Countryside, Illinois addressed to "Collin Grant, NDG, Tuebec [sic], Canada, H4A3H2." "2104 Prudhomme" was crossed out on the envelope. This check was intercepted by the RCMP. Mary Moldenhauer never received a prize as promised by the telemarketers calling on behalf of the Collin Grant Organization.

8. Jason Leithead was arrested on May 23, 1997 pursuant to an arrest warrant issued in the Northern District of Illinois. Leithead was indicted for his participation in the Collin Grant Organization. Leithead agreed to provide information regarding the telemarketing activities of the Collin Grant Organization. Leithead's attorney and I were present during Leithead's proffer session. Leithead provided the following information:

A. Leithead was a telemarketer for the Collin Grant Organization between January 1996 and May 1996.

B. Telemarketers working for the Collin Grant Organization placed telephone calls to U.S. citizens. All of the calls to the United States were made from Canada. The telemarketers falsely claimed they were U.S. Customs agents holding a

3

cashier's check the victim had won in a sweepstakes or lottery. The telemarketers fraudulently informed the victims that they had to pay a fee or Customs duty before they could claim their prize. The telemarketer provided the victims with the address of a "mail drop" where the victims were instructed to send a cashier's check to claim their prizes.

C.   David ROST supervised the telemarketing room with the assistance of Ronald Blum (AKA "SHARKEY").

D.   Anson Oliver was one of the Collin Grant telemarketers who also worked with Leithead for ROST.

E.   Leithead and the other telemarketers in the Collin Grant Organization directed the victims to mail cashier's checks to "mail drop" locations.

G.   2104 Prudhomme, NDG, Quebec, Canada  H4A3H2 was a mail drop location where the Collin Grant Organization received victims' checks.

H.   Leithead reviewed a copy of a journal that was seized by RCMP officers. The journal contained the hand written address Collin Grant, 2104 Prudhomme, NDG, Quebec, Canada. Leithead said he wrote the address in the journal. Leithead said he and other telemarketers working in the Collin Grant Organization told victims to send checks to this address.

I.   After ROST cashed the victims' checks, ROST or a manager of the telemarketing room paid Leithead 30 percent of the amount sent by victims.

J.   In the Spring of 1996, Leithead, Blum and ROST met at a

4

restaurant and discussed details of the scheme to defraud U.S. citizens.

K. Leithead recognized the name of Mary Moldenhauer as an individual who was victimized by telemarketers working in the telemarketing room operated by ROST in the spring of 1996.

9. 2104 Prudhomme, NDG, Quebec, Canada is the mail drop where Mary Moldenhauer sent checks to the Collin Grant Organization.

10. On July 17, 1997 Ronald Blum was arrested in Montreal, Quebec for his participation in the Collin Grant Organization. Blum is in custody in Canada pending his extradition to the United States.

11. On April 2, 1998 I interviewed a confidential source of information (CI-1) in Montreal, Canada who provided the following information:

A. CI-1 worked as a telemarketer for ROST and the Collin Grant Organization between approximately October 1995 and July 1997.

B. ROST owned and supervised several fraudulent telemarketing rooms.

C. ROST sat at a desk located next to the CI-1. CI-1 could hear and see ROST manage his telemarketing organization. CI-1 frequently spoke to "Sharkey" and is familiar with his voice.

D. Each morning when ROST arrived in the office he placed his telephone on speaker and played messages from an answering service. The recorded message on the answering service was in

5

"Sharkey's" voice. Victims would leave a message with the airway bill numbers of the parcels containing their checks.

E. ROST wrote down the airway tracking numbers and sent a courier to pick up the parcels.

F. ROST operated telemarketing rooms managed by "Sharkey" and Anson Oliver. These telemarketing rooms defrauded United States citizens.

G. Oliver told CI-1 that he will only work for ROST.

H. In July 1997, after "Sharkey's" arrest, the CI-1 noticed ROST was visibly shaken. CI-1 told ROST to be careful because "Sharkey" could "spill the beans" and give information to the police concerning ROST's fraudulent telemarketing activity. ROST replied, "Sharkey won't do that to me."

I. Telemarketers working for ROST instructed victims to send checks by United Parcel Service (UPS) Next Day Air to 1 Place Ville Marie, Montreal. ROST paid a (UPS) driver with cocaine to intercept the parcels containing victims' checks. The UPS driver delivered the checks to ROST or a member of his organization.

12. I spoke to RCMP Cpl Knight who said he identified the UPS driver as Norman Weeks. Cpl Knight stated UPS fired Weeks for his involvement in the telemarketing scheme.

13. A second confidential source of information (CI-2) worked for ROST. On June 18 and 19, 1998 I interviewed CI-2 who provided the following information:

A. CI-2 worked for ROST managing several fraudulent

telemarketing rooms. ROST told CI-2 that he operated a full service telemarketing operation, which operated similar to a franchise.

B. ROST provided telemarketers with names and telephone numbers of potential victims.

C. ROST provided CI-2 and other telemarketers with cellular telephones. The cellular telephones were used to call telemarketing victims. The cellular telephones were obtained under false pretenses to prevent law enforcement officials from tracing telephone calls to the telemarketers. ROST charged CI-2 between $200 and $500 for each cellular telephone.

D. ROST provided CI-2 and others with addresses of "mail drop" locations. Telemarketers instructed the victims to send cashier's checks to the "mail drop" addresses. ROST directed someone to pick up the cashier's checks from "mail drop" locations. ROST laundered the victims' cashier's checks through his contacts in the banking community.

E. Occasionally victims placed stop payments on their cashier's check before ROST could launder the check. When this occurred, ROST provided CI-2 with the original cashier's check as proof the check was not negotiated.

F. For providing the services listed above, ROST charged CI-2 between 40 and 50 percent of the amount each victim sent.

G. Anson Oliver is a fraudulent telemarketer who works for ROST.

7

14. In November 1997, ROST provided CI-2 with a sealed envelope containing cash and checks from telemarketing victims. CI-2 observed ROST write the address 9 Boul Montcalm, Suite 350, Candiac, Que J5R-3L5. ROST explained the address was a new "mail drop" where CI-2 should direct telemarketing victims to send checks. The same day CI-2 received the envelope from ROST, he/she provided the sealed envelope to RCMP Cpl Knight.

15. Cpl Knight opened the envelope which contained 5 cashier's checks worth approximately $49,273 and $6,190 in Canadian currency. CI-2 said the five cashier's checks were from victims who placed stop payments on the checks before they were negotiated. The $6,190 in Canadian currency was payment to SA-072 for two cashier's checks that were laundered by ROST. ROST also wrote telephone number (212) 539-8856, code 3107, on the envelope. ROST told SA-072 to provide the telephone number to victims who demanded a telephone number where they could contact SA-072. ROST said the telephone number was to an answering service where the victims could leave a message.

16. I interviewed a third confidential source (CI-3) who stated that ROST was a fraudulent telemarketer. CI-3 said ROST supervised fraudulent telemarketing rooms. CI-3 said that ROST laundered the proceeds he derived from telemarketing fraud.

17. I interviewed Jeff Potofsky, the Owner of Canadian Catalog Company. Potofsky said he hired "Sharkey," Anson Oliver and Jason Leithead to work as telemarketers selling products for the catalog company. "Sharkey," Oliver and Leithead worked for a

telemarketing room operated by ROST prior to working for Potofsky. Potofsky discovered "Sharkey" lied to U.S. citizens and defrauded them of over $100,000. Potofsky fired "Sharkey" for defrauding customers. "Sharkey" then went back to work as a telemarketer for ROST. A few months later Leithead and Oliver quit working at the Canadian Catalog Company and returned to work for ROST.

18. As a result of the foregoing, I believe there is probable cause to believe David ROST violated Title 18, United States Code, Sections 1341 (Mail Fraud), 1343 (Wire Fraud) and aided and abetted such offense in violation of Title 18, United States Code, Section 2.

FURTHER AFFIANT SAYETH NOT.

Jerome H. Deaven
Senior Special Agent
United States Customs Service

SWORN and SUBSCRIBED to before me this 21st day of July, 1998.

W. Thomas Rosemond, Jr.
U.S. Magistrate Judge

9